IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, Inc. and<br>ACACIA COMMUNICATIONS, Inc.,<br><br>              Plaintiffs,<br><br>    v.<br><br>RAMOT AT TEL AVIV UNIVERSITY, Ltd.,<br><br>              Defendant. | Civil Action No. 21-1365-GBW |

## MEMORANDUM ORDER

Pending now before the Court is Plaintiffs Cisco Systems, Inc.'s ("Cisco") and Acacia Communications, Inc.'s ("Acacia") (collectively, "Plaintiffs") Motion to Stay Pending *Inter Partes* Review ("IPR") of U.S. Patent No. 11,133,872 (the "'872 patent") (the "Motion"). D.I. 52. The Court has considered the parties' briefing, D.I. 53; D.I. 56; D.I. 61. For the reasons explained below, the Court grants-in-part and denies-in-part the Motion.

I.    BACKGROUND

On September 28, 2021, Plaintiffs filed this action against Defendant Ramot at Tel Aviv University, Ltd. ("Ramot") seeking "declaratory relief under 28 U.S.C. §§ 2201 and 2202 with respect to [the '872 patent]." D.I. 1 at 1. On February 7, 2022, Ramot filed its Answer and Counterclaims. D.I. 8. On March 7, 2022, Plaintiffs filed their Answer to Ramot's Counterclaims. D.I. 11. However, as recounted in the Court's recent Memorandum Opinion, this case is one of several between the parties now before this Court. *See* D.I. 51. On February 26, 2021, "Ramot sued Acacia, alone, . . . for infringement" of two patents. *See* D.I. 51 at 2. On May 24, 2022, Ramot's United States Patent No. 11,342,998 (the "'998 patent") issued and, the same day at 12:01 a.m., Plaintiffs "brought another declaratory judgment action against Ramot in this Court and

1

alleged that Cisco and Acacia did not infringe the newly-issued '998 patent[.]" D.I. 51 at 3 (citing C.A. No. 21-295; C.A. No. 22-674). The Court previously explained that, in C.A. No. 22-674, Plaintiffs "abused the Declaratory Judgment Act by running to the courthouse at 12:01 a.m. on the day that Ramot's patent was released." D.I. 51 at 10.

Plaintiffs filed two petitions for IPR on the '872 patent on February 16, 2022. D.I. 53 at 4; *see* D.I. 56 at 1 (not contesting those facts). The two petitions collectively cover all claims of the '872 patent. D.I. 53 at 4. On October 5, 2022, the Patent Trial and Appeal Board ("PTAB") instituted IPRs for both petitions. D.I. 53-1, Exs. 1 & 2 (PTAB's decision granting IPR petitions). Final written decisions on the two instituted IPRs are due by October 5, 2023. *See* 35 U.S.C. § 316(a)(11) (imposing a one-year timeframe, but permitting an extension for "good cause").

## II.    LEGAL STANDARD

"Motions to stay invoke the broad discretionary powers of the court." *Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 532 (D. Del. 2012). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021) (citing *Ethicon LLC v. Intuitive Surgical, Inc.*, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)). The parties agree these factors apply. D.I. 53 at 5; D.I. 56 at 3.

## III.    DISCUSSION

For the reasons stated below, the Court grants-in-part and denies-in-part Plaintiff's Motion.

The first stay factor—whether granting the stay will simplify the issues for trial—weighs in favor of a stay. The PTAB has instituted IPR proceedings on all asserted claims for the '872 patent. Ramot argues that Plaintiffs' claims of non-infringement, inequitable conduct, and certain challenges under 35 U.S.C. § 112 are not before the PTAB. D.I. 56 at 6. Ramot also asserts that it will not amend any claims of the '872 patent during the IPR process and that any invalidation of claims by the PTAB "would have the same ordinary and minimal impact as the ordinary reduction in asserted claims that occurs in every patent case as it approaches trial." D.I. 56 at 8–9. However, the Court and parties would waste effort by construing or hiring experts to analyze terms in claims that the PTAB then invalidated. Ramot also argues that the PTAB has not instituted an IPR as to the '998 patent, and this case shares a scheduling order with the case that concerns the '998 patent, No. 22-674. D.I. 56 at 7. However, C.A. Nos. 21-1365 and 22-674 remain separate, and Plaintiffs seek a stay only of C.A. No. 21-1365.

The second stay factor—the status of the litigation—also favors a stay. The case is in its early stages. Fact discovery does not close until September 29, 2023, expert discovery closes on February 9, 2024, and trial is scheduled to begin September 16, 2024. *See* D.I. 59 ¶¶ 4(a), 4(f)(iv), 21. Ramot argues that "the executed Scheduling Order places no substantive work by the Court, and only ordinary discovery and claim construction briefing by the parties, between today and the conclusion of the '872 Patent IPRs." D.I. 56 at 10. Further, Ramot explains that "[t]he parties have already agreed to reuse all of the document production" from a prior case here and, thus, "tens of thousands of documents have already been effectively (or literally) produced here." *Id.* Plaintiffs respond that the prior discovery failed to cover both "additional products" now at issue and developments in the intervening period. D.I. 61 at 8. The Court finds that the limited resources spent to date in this case favor a stay, even if the parties will reuse materials from prior cases.

However, the third stay factor—the risk of undue prejudice to Ramot—disfavors a stay. First, "the court recognizes that [Ramot] is prejudiced by having its day in court delayed further." *Textron Innovations Inc. v. Toro Co.*, 2007 WL 7772169, at *3 (D. Del. Apr. 25, 2007). Second, rather than wait for Ramot to sue for infringement, Plaintiffs filed this case "to remove the cloud of infringement allegations placed over their optical-transceiver-module-related products by the '872 patent." D.I. 1 ¶ 7. When Ramot asked the Court to dismiss Plaintiffs' claims under the Declaratory Judgment Act and proceed only on Ramot's counterclaims, Plaintiffs resisted and *again* insisted that this Court hear their case. D.I. 28 at 6. Third, Plaintiffs elected to raise non-infringement and inequitable conduct claims that the IPR process cannot resolve. D.I. 1 ¶¶ 51–52; D.I. 11 at 21–31. Plaintiffs also provide little reason that the PTAB's ruling in the instituted IPRs would affect fact discovery in this case. *See* D.I. 61 at 7–8 (discussing likelihood of "motion practice" arising from discovery). While the PTAB may invalidate all asserted claims of the '872 patent, D.I. 61 at 6, both this Court and the PTAB must presume the '872 patent is valid, *see* 35 U.S.C. § 282(a).[1] This Court granted a declaratory judgment plaintiff's stay request in *IOENGINE, LLC v. PayPal Holdings, Inc.*, but that case is distinguishable because the declaratory judgment plaintiff there was "a potential indemnitor" of a defendant against whom the patentee had already filed suit. 2020 WL 419448, at *1, *7 (D. Del. Jan. 27, 2020). Here, Plaintiffs filed first and asked to litigate in this Court. *See* D.I. 28 at 1 (invoking the first-filer rule).

The risks that the Court will construe and that the parties will enlist experts to analyze claims that the PTAB then invalidates favor a stay. However, the risk of prejudice to Ramot disfavors a stay. The Court agrees with Ramot that permitting fact discovery to move forward

---

[1] While not directly applicable here, the Court found in a companion case that "[Plaintiffs] abused the Declaratory Judgment Act by running to the courthouse at 12:01 a.m. on the day that Ramot's patent was released." D.I. 51 at 10.

4

would help reduce prejudice from "evidence going stale," D.I. 56 at 11, while it would limit the unnecessary use of the Court's resources. Thus, on balance, the Court denies the stay as to fact discovery—paragraphs 1, 2, 3(a), 3(b), 4(a) and 4(b) of the Court's Scheduling Order, D.I. 59—and grants the stay as to all other dates in the Scheduling Order in C.A No. 21-1365.

### IV. CONCLUSION

For the reasons stated above, the Court grants-in-part and denies-in-part the stay.

Therefore, at Wilmington this 19th day of January, 2023, **IT IS HEREBY ORDERED** that Cisco's and Acacia's Motion to Stay C.A. No. 21-1365 Pending *Inter Partes* Review ("IPR") (the "Motion," D.I. 52) is **GRANTED-IN-PART** and **DENIED-IN-PART**:

1. The Motion is **DENIED** as to the dates contained in paragraphs 1, 2, 3(a), 3(b), 4(a) and 4(b) of the Court's Scheduling Order in C.A. 21-1365, D.I. 59;

2. The Motion is **GRANTED** as to all other dates contained in said Scheduling Order; and

3. The parties shall jointly file a status report and proposed amended scheduling order for all stayed deadlines within seven (7) days of the PTAB's final determination in the IPRs.

GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE