# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 25, 2024

The Honorable Gregory B. Williams           <u>VIA ELECTRONIC FILING</u>
United States District Court
844 N. King Street
Wilmington, DE 19801

       Re:     *Cisco Sys., Inc. and Acacia Comm'ns, Inc. v. Ramot at Tel Aviv Univ. Ltd.*, <u>C.A. Nos. 21-1365 (GBW) and 22-674 (GBW)</u>

Dear Judge Williams:

Pursuant to Paragraph 7 of the Scheduling Order (D.I. 103), Ramot at Tel Aviv University ("Ramot") respectfully submits this response to the technology tutorial submitted by declaratory judgment plaintiffs Cisco Systems, Inc. and Acacia Communications, Inc. ("Cisco").

Cisco's technology tutorial presents technical information in an artificially limited and argumentative way—in an attempt to make the embodiments of the asserted patents appear narrow and limited according to Cisco's incorrect interpretations and arguments in its briefs.

For example, on or about slide 32, Cisco presents an imagined implementation where electrodes receive slightly different versions the same, allegedly "digital" voltage value (5, 5.1, 5.3, etc.). This is merely Cisco's argumentative re-interpretation of the multiple distinct level modulation embodiments explained by Ramot (*e.g.*, Joint Brief at 51-53) and disputed by Cisco (Joint Brief at 66). Cisco's presentation of its own manufactured interpretation and argument as if it were a standard technological solution or an embodiment of the patents is misleading, incorrect, and improper in a tutorial.

As an additional example, Cisco's technology tutorial introduces a false dichotomy between so called "digital vs. analog" control in optical modulators starting on slide 21. But this strict distinction is entirely artificial and manufactured by Cisco to serve its arguments seeking to

The Honorable Gregory B. Williams
July 25, 2024
Page 2

improperly limit the claims. There are various architectures and technologies used to "control" optical modulator electrodes, including those depicted in the slides—*e.g.*, single electrode, dual electrode, and multiple electrodes—as well as direct connection, use of linear or limiting drivers, and/or use of DACs. And these technologies may be combined in a given application.

It is technically incorrect to say that there are only "two types of modulators," or to suggest that analog refers only to a system where the electrode voltages take "any level," as Cisco does in its tutorial and brief (*see* Joint Brief at 36). In reality, while there are many possible configurations and ways to accomplish it, the electrodes must be driven with a set of ***distinct*** voltages so that the correct data value can be recognized and decoded on the receiving end of the optical fiber.

Persons of ordinary skill, and Ramot's inventors, sometimes refer to these distinct sets of voltage values as "analog" even though only a subset of the complete range of possible values is used in the system. *See e.g.*, '998 patent, at 4:58-67 ("'analog' refers to a form of data in which values are represented by different levels within a range of values"), 8:23-31 ("multiple actuating voltage levels" and "switching between different distinct voltage levels"). "Digital" and "analog" are defined terms in the asserted patents. *See id.*, at 4:58-67. But Cisco's tutorial uses the terms according to its own self-serving purposes with no acknowledgment of this fact.

Cisco weaves its false analog / digital dichotomy throughout its tutorial in an effort to limit the scope of the asserted patents to one of the two false "types"—what Cisco calls "digital control" modulators. Again, this starts at slide 22 and reaches a crescendo at slides 34-36 when Cisco argues that the claimed inventions of the asserted patents are limited to "digital control" modulators. Argument such as this is inappropriate in a technology tutorial. And as explained, the argument is based on a false premise.

The inventions of the asserted patents can be deployed to improve many different types of

{02037661;v1 }

modulators, with many different configurations. *See e.g.* '998 patent, at 16:63-17:6 ("[t]he present invention is applicable to substantially all applications requiring a DAC [digital-to-analog converter] with optical or electrical output… [and] many other embodiments are possible within the scope of the present invention…").

Cisco's purpose of limiting scope would also be an incorrect application of the law. As covered in Ramot's briefs on "Issue #2," the scope of the invention is defined by the claims and not limited to specific embodiments, much less prior art, disclosed in the specification except under rare circumstances that are not present in this case. *See* D.I. 100 at 24-32, 49-61; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).

In the end, Cisco has improperly used its technology tutorial—which is substantially different than the technology tutorial Cisco submitted in Texas a few years ago—to seed and/or supplement its claim construction position on "Issue #2," which itself is an attempt to pre-argue a non-infringement position. Ramot submits that is improper and the section of Cisco's tutorial between slides 21 and 36 should be disregarded.

Respectfully,

*/s/ Andrew C. Mayo*

Andrew C. Mayo (#5207)

ACM/mlk

cc:   All counsel of record (via electronic mail)

{02037661;v1 }