IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant. | C.A. No. 21-1365-GBW |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant. | C.A. No. 22-674-GBW (consolidated) |

Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; L. Norwood Jameson, Matthew C. Gaudet, Sajid Saleem, Daniel Mitchell, DUANE MORRIS LLP, Atlanta, GA; Joseph A. Powers, DUANE MORRIS LLP, Philadelphia, PA; Holly E. Engelmann, DUANE MORRIS LLP, Austin, TX; Elizabeth Moulton, ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, CA.

*Counsel for Plaintiffs*

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Denise De Mory, Corey Johanningmeier, BUNSOW DE MORY LLP, Redwood City, CA.

*Counsel for Defendant*

**MEMORANDUM OPINION**

October 23, 2025
Wilmington, Delaware

> _____
> GREGORY B. WILLIAMS
> UNITED STATES DISTRICT JUDGE

Plaintiffs Cisco Systems, Inc. and Acacia Communications, Inc. (collectively, "Plaintiffs") have brought declaratory judgment actions against patentee Ramot at Tel Aviv University ("Defendant"). Before the Court are Defendant's Motion for Partial Summary Judgment (No. 1) (D.I. 225) and Defendant's Motion for Partial Summary Judgment (No. 2) (D.I. 226) (collectively, "Defendant's Summary Judgment Motions").[1] For the reasons set forth below, Defendant's Summary Judgment Motions are DENIED.

## I.     BACKGROUND

### A.     Procedural History

On September 28, 2021, Plaintiffs filed this action against Defendant seeking "declaratory relief under 28 U.S.C. §§ 2201 and 2202 with respect to U.S. Patent No. 11,133,872 ('the '872 Patent')." (D.I. 1 at 1). On February 7, 2022, Defendant filed its Answer and Counterclaims, asserting that Plaintiffs "directly and indirectly infringe" the '872 Patent. (D.I. 8 ¶ 79).

On May 24, 2022, Defendant's United States Patent No. 11,342,998 ("the '998 Patent") issued and Plaintiffs "brought another declaratory judgment action against [Defendant] in this Court and alleged that [Plaintiffs] did not infringe the newly-issued '998 [P]atent . . . ." (D.I. 51 at 3 (citing C.A. No. 22-674, D.I. 1)). Defendant then filed an Answer and Counterclaim for Patent Infringement on July 29, 2022 in 22-674, alleging that Plaintiffs "directly and indirectly infringe" the '998 Patent. (C.A. 22-674, D.I. 10 ¶ 98).

---

[1]     Unless otherwise noted, all citations to the docket are referring to C.A. No. 21-1365-GBW.

On January 26, 2024, Plaintiffs filed Amended Answers[2] to Defendant's Counterclaims in both 21-1365 and 22-674, raising as an affirmative defense that the asserted claims of the '872 Patent and the '998 Patent (together, "the Asserted Patents") are invalid for, among other reasons, failing to meet the requirements of 35 U.S.C. § 102. (D.I. 90 at 21 (Second Defense); C.A. No. 22-674, D.I. 80 at 22 (Second Defense)).

### B.  The Nortel Modem

The following facts are undisputed for the purposes of this motion. Plaintiffs' technical expert, Dr. Duncan MacFarlane ("Dr. MacFarlane"), opines that the Asserted Patents are "invalid under 35 U.S.C. § 102(b) based on [the] Nortel/Ciena Next Generation Modem ('NGM') Transmitter System" (the "Nortel Modem"). (D.I. 228 ¶ 1; *see also* D.I. 253 ¶ 1 (not disputing)). Dr. MacFarlane believes that the Nortel Modem qualifies as prior art under § 102(b) because it "was on sale in the U.S. during the first quarter of 2006," more than a year before the Asserted Patents' earliest claimed priority date of June 13, 2007. (D.I. 253 ¶ 1 (quoting D.I. 229, Ex. C ¶ 188)). "With the exception of two press releases, all of the technical documents . . . relied on by Dr. MacFarlane to analyze the [Nortel Modem] were kept, marked, and designated as secret." (D.I. 228 ¶ 7; *see also* D.I. 253 ¶ 7 (not disputing)). Additionally, "[t]he circuitry of the [Nortel Modem] that Dr. Macfarlane points to as performing the claimed features is not discernable by the public from the identified system." (D.I. 228 ¶ 6 (citations omitted); *see also* D.I. 253 ¶ 6 (not disputing)).

\*   \*   \*

On May 15, 2025, Defendant filed its Summary Judgment Motions. (D.I. 225; D.I. 226). Defendant's Summary Judgment Motions have been fully briefed. (*See* D.I. 227; D.I. 252; D.I. 275). The Court now turns to the merits.

---

[2]  Plaintiffs filed earlier answers to Defendant's Counterclaims. (D.I. 11; 22-674, D.I. 14).

## II. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citing *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

### B. On-Sale Bar to Patentability

"A person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b) (pre-AIA).[3] In order for a patent to be invalid under the on-sale bar, "[t]he statute requires that (1) the subject of the offer for sale must embody the claims of the asserted patent; (2) the offer for sale must have been 'in this country;' and (3) the offer for sale must occur before the critical date of the asserted patent." *Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*, 122 F.4th 919, 924 (Fed. Cir. 2024) (quoting *Meds. Co v. Hospira, Inc. (Medicines I)*, 827 F.3d 1363, 1372, 1374 (Fed. Cir. 2016) (en banc)). Additionally, the Supreme Court has articulated "two additional conditions [that] must be met before the critical date: the invention is (4) 'the subject of a commercial offer for sale' and (5) 'ready for patenting.'" *Id.* (quoting *Pfaff v.*

---

[3] Both the '872 Patent and the '998 Patent have an earliest claimed priority date of June 13, 2007. (*See* D.I. 253 ¶ 1).

3

*Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998)). "Whether the on-sale bar applies is a question of law based on underlying factual findings." *Meds. Co.*, 827 F.3d at 1371.

## III.  DISCUSSION

Defendant first moves for summary judgment that the Nortel Modem, upon which Plaintiffs intend to rely on for their invalidity arguments, is not prior art under pre-AIA § 102(b). (D.I. 227 at 1 (citing D.I. 229, Ex. C ¶¶ 236, 386, 406, and 595)). Even if Nortel, a third party, sold the Nortel Modem before the critical date, Defendant asserts that "the details [of the Nortel Modem] that [Plaintiffs] allege[] correspond to the claimed features were intentionally kept secret." (D.I. 227 at 3-4 (citing D.I. 228 ¶¶ 1-8)). In Defendant's view, § 102(b)'s on-sale bar "is not implicated by a third-party sale when the claimed details of the invention are 'kept secret and remain secret after a sale.'" (*Id.* at 5 (quoting *In re Caveney*, 761 F.2d 671, 675-76 (Fed. Cir. 1985))). Therefore, according to Defendant, the Nortel Modem "does not qualify as prior art under [§] 102(b) as a matter of law." (D.I. 227 at 1). The Court disagrees.

The Federal Circuit has addressed this issue in *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577 (Fed. Cir. 1986). In *J.A. LaPorte*, the Federal Circuit held that secret sales by a third party can implicate § 102(b)'s on-sale bar. 787 F.2d at 1583. In determining whether the sale of a product implicated the on-sale bar, the Federal Circuit made clear that "the question is not whether the sale, even a third-party sale, 'discloses' the invention at the time of the sale, but whether the sale relates to a device that *embodies* the invention." *J.A. LaPorte.*, 787 F.2d at 1583 (emphasis in original).

Also, as Plaintiffs point out, the Federal Circuit cases discussing the on-sale bar that Defendant relies on concern third-party sales of unpatented products that were manufactured by a secret method. *See, e.g., In re Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985) ("An exception to [the on-sale bar] exists where ***a patented method*** is kept secret and remains secret after a sale of the

4

unpatented product of the method." (emphasis added)); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("If [the third party] offered and sold anything, it was only tape, *not whatever process was used in producing it*. Neither party contends, and there was no evidence, that the public could learn *the claimed process* by examining the tape." (emphasis added)); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147 (Fed. Cir. 1983) ("Where *a method is kept secret*, and remains secret after a sale *of the product of the method*, that sale will not, of course, bar another inventor from the grant of a patent on that method." (emphasis added)).

In response, Defendant asserts that "there is no reason to treat" a device embodying a claimed system differently than a device manufactured using a claimed process when determining if § 102(b)'s on sale bar is implicated. (D.I. 275 at 4). However, the Federal Circuit has clearly explained otherwise in *J.A. LaPorte*, which it differentiated from *W.L Gore*:

> With respect to *Gore v. Garlock*, that decision does not support the broad proposition that the "secret" commercialization of an invention by a third party creates no bar. As indicated, the question there was whether the process had been placed on sale by the third party's sale of a product made by the process. There had been no sale of the process *per se*, and the process was not discoverable from the product. Under those circumstances, the "secret" commercial use of the process by one did not raise the on-sale bar against the other.

787 F.2d at 1582. Thus, the Court finds that the line of cases cited by Defendant, which concern devices manufactured by a claimed process, and the instant case, which concerns devices embodied by the claims, are distinguishable.

Defendant also asserts that "some of the claims that [Plaintiffs] seek[] to invalidate with the Nortel [Modem] are in fact method claims – squarely within the rule as explicitly formulated in the *W.L. Gore* line of cases, and acknowledged by [Plaintiffs]." (D.I. 275 at 4 (citations omitted)). Defendant's assertion, however, misses the mark. It is not simply that *all* third-party

5

sales concerning method claims are properly analyzed under the "for use" prong of § 102(b), but only sales of *products manufactured using a secret method. See, e.g., In re Caveney*, 761 F.2d at 675. If the Nortel Modem was merely *manufactured* using a method claimed in the Asserted Patents, then the Court would agree with Defendant that the Nortel Modem would not qualify as prior art under § 102(b)'s on-sale bar as to those claims. If, however, the Nortel Modem *practices* a method claimed in the Asserted Patents, then it may be considered a "sale of the process *per se*" and would qualify as prior art under § 102(b)'s on-sale bar, *J.A. LaPorte*, 787 F.2d at 1582. Because this argument appears in one sentence in Defendant's reply brief, (*see* D.I. 275 at 4), and because this distinction is not fully developed, the Court declines to treat the method and systems claims separately at the summary judgment stage.

Importantly, Defendant does not squarely address *J.A. LaPorte* in its briefing. Defendant does, however, try to claim that the on-sale bar does not apply "where the alleged prior invention is secret and the claimed features are not discernable from the thing sold and used . . . ." (D.I. 275 at 4; *see also id.* at 5 ("What is undisputed here is that no disclosure, explicit or inherent, of the claimed features occurred by the alleged sale. Even if someone wanted to know, they could not know – even with the [Nortel Modem] in hand." (citation omitted))). Although *J.A. LaPorte* did involve a scenario where "the invention . . . was discoverable from the device which was sold," 787 F.2d at 1582, the Court finds that distinction to be without consequence in the present circumstance. The Federal Circuit has stated that the on-sale bar is concerned with "whether the sale relates to a device that *embodies* the invention," not whether the sale discloses the invention. *J.A. LaPorte*, 787 F.2d at 1583 (citations omitted); *see also Ingenico Inc. v. IOENGINE, LLC*, C.A. No. 18-826-WCB, 2022 WL 20814960, at *17 (D. Del. Dec. 9, 2022) (Bryson, J., sitting by designation) ("In cases involving disclosure by a third party not under an obligation of

confidentiality, courts have consistently rejected IOENGINE's argument that a device is not in public use if its contents would not have been apparent to an ordinary user of the device. . . . The same rule has been applied to cases involving the 'on sale' bar to patentability . . . ."), *aff'd*, 136 F.4th 1354 (Fed. Cir. 2025); *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 01-CV-09871 RGK (RCX), 2003 WL 25761597, at *52 (C.D. Cal. Dec. 2, 2003) ("The sale of a device embodying a claimed invention by a third party more than one year prior to the critical date may bar the patentee from obtaining a valid patent on the claimed invention. That actual users of the device purchased by another may not learn the details of its operation is immaterial." (citations omitted)). A device embodies the invention if it practices each claim limitation. *See Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) ("[T]he first determination in the § 102(b) analysis must be whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention."). Thus, the Court finds that, although the circuitry of the Nortel Modem is not discernable by the public, or even the alleged purchaser, it may still qualify as prior art under § 102(b).

Defendant also emphasizes that the information regarding the Nortel Modem was confidential. (D.I. 227 at 7 ("[Defendant]'s expert, Dr. Dallesasse, looked at each of the documents that Dr. MacFarlane listed as having been relied on, and confirmed that they all bore restrictive confidentiality designations." (citation omitted))). In *J.A. LaPorte*, the device that was placed on sale was derived from photographs of the inventor's device, with the photographing party obtaining the inventor's permission, and without instructions from the inventor regarding confidentiality. 787 F.2d at 1579 ("It is undisputed that Jantzen photographed the extension in Cucheran's presence, with his permission, and with no directions from him concerning confidentiality."). However, the Court also finds this distinction to be without consequence. In

7

*J.A. Laporte*, the Federal Circuit did not emphasize that the invention originally stemmed from the patentee in their ruling, except to note that such a derivation provided conclusive proof that the subject of the sale embodied the patented invention. 787 F.2d at 1583 ("The fact that the device here was made from photographs of the inventor's own embodiment of his invention eliminates any question that the subject of the sale and the claimed subject matter of the patent were one and the same."). Whether the Nortel Modem embodies the invention is not a question currently before the Court. The question is whether a secret sale of a device by a third party that embodies the claimed invention, but did not stem from the inventor of said invention, can qualify as prior art under § 102(b). Under the circumstances of the instant action, the Court concludes that the answer is yes.

In so holding, the Court is aware that "some courts have held that a secret sale by a third party of a product that allegedly anticipates an apparatus claim that would cover the product will not trigger an on-sale bar." Robert A. Matthews, Jr., Annotated Patent Digest § 17:99.50 (2025). *Schlumberger Technology Corp. v. BICO Drilling Tools, Inc.*, C.A. H-17-3211, 2019 WL 2450948 (S.D. Tex. June 12, 2019) is emblematic of such cases. In *Schlumberger*, the court held that, when sales of a product by a third party disclose the invention, such sales "should be analyzed under the public use prong," relying on the Federal Circuit's decisions in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) and *In re Caveney*, 761 F.2d 671 (Fed. Cir. 1985). 2019 WL 2450948, at *9. The *Schlumberger* court did not address *J.A. Laporte*, but instead drilled down on a footnote in *Caveney*, which was quoted in *ResQNet*, stating "that sales 'made by others and disclosing the claimed invention implicate the "public use" provision,' not the 'on-sale' bar . . . ." 2019 WL 2450948, at *6 (quoting *In re Caveney*, 761 F.2d at 675 n.5). The court in *Schlumberger* went on to explain that the courts in *Cavaney* and *RsQNet* noted "that the on-sale provision 'is

8

directed at precluding an inventor from commercializing his [or her] invention for over a year before he [or she] files his [or her] application.'" 2019 WL 2450948, at *6 (alterations in original) (quoting *In re Caveney*, 761 F.2d at 675 n.5).

This Court, however, finds that the *Caveney* footnote, and its repetition in *RsQNet*, to be dicta. *FMC Techs., Inc. v. OneSubsea IP UK Ltd.*, 412 F. Supp. 3d 706, 713 (S.D. Tex. 2019) ("The statement in *ResQNet* regarding the 'public use' provision of § 102(a)(1), like the statement in *Caveney*'s footnote, was dicta.").[4] *Caveney* and *RsQNet* are properly distinguishable. In *Caveney*, the Federal Circuit was addressing the situation "where a patented method is kept secret and remains secret after a sale of the unpatented product of the method." 761 F.2d at 675. As discussed above, such a situation is distinguishable from the instant case. And although the dicta in *Cavaney* is repeated in *RsQNet*, the Federal Circuit in *RsQNet* affirmed the lower court, not because the on-sale bar was inapplicable to third-party sales, but because "the advertised version [of the allegedly invalidating reference] did not embody all of the elements of the patented product . . . ." *Schlumberger*, 2019 WL 2450948, at *6 (citing *RsQNet*, 594 F.3d at 867). Because the cases relied on by the *Schlumberger* court are distinguishable, and because *Schlumberger* did not address *J.A. LaPorte*, this Court finds that *Schlumberger* and similar cases do not warrant granting Defendant's motion for summary judgment.

Based on the above analysis, this Court concludes that *J.A. LaPorte* governs in the circumstances of the present action. Secret sales by third parties, even sales where there is no

---

[4] The Court in *FMC Technologies* references § 102(a)(1) rather than § 102(b) because the patents at issue there were filed after the enactment of the AIA. 412 F. Supp. 3d at 709 ("The patent application was filed [on] March 27, 2017, and . . . granted [on] April 17, 2018."). This distinction, however, is without consequence, as the analysis of the on-sale bar under pre-AIA and post-AIA law is the same. *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 132 (2019) ("Congress did not alter the meaning of 'on sale' when it enacted the AIA . . . .").

9

disclosure of the claimed invention, can trigger § 102(b)'s on-sale bar if the sold product embodies the claimed invention. *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 968 n.7 (Fed. Cir. 2020) ("In [*J.A. LaPorte*], we held only that a third party's secret sale of a device created an on-sale bar to a later inventor's patent on the same device – an unremarkable proposition . . . ."). For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (No. 1) (D.I. 225) is DENIED. Also, given the Court's summary judgment ranking procedures, Defendant's Motion for Partial Summary Judgment (No. 2) (D.I. 226) is DENIED. (*See* D.I. 103 ¶ 13(d)). An appropriate Order will be entered.